IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS GIEDGOWD** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-6184 |
| | : | |
| **CAFARO GROUP, LLC** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                     **October 26, 2021**

The Pennsylvania General Assembly incentivizes lawyers to represent former employees who believe their relatively older age is a determinative or "but for" reason for their employer firing them. The attorneys agreeing to represent the former employees and who then win at trial are entitled to have the former employer pay their documented and reasonable attorney's fees and costs after our review of the former employer's objections to the submitted invoices.

We today review a former employee's petition for reasonable attorney's fees and costs after his counsel artfully marshaled the evidence, presented witnesses and documents, and persuaded our jury to award him over $451,000 in damages after new management with his employer fired him at sixty-six years of age following decades of service. The former employer objects to limited time entries relating to the senior attorney's need to be involved at all, his requested hourly rate, and specificity in some of his billing entries. The former employer also objects to identified block billing entries by trial counsel. And it lastly objects to entries recorded by a less experienced attorney relating to deposition designations and for her time traveling between her home, the office, and the Courthouse during trial. We carefully reviewed each specific objection. We sustain the former employer's objections to the requested hourly rate for the senior partner and his ambiguous billing entries. We further sustain the objection as to the junior

attorney's billing for time traveling between her home, the office, and the Courthouse during trial. We otherwise overrule the former employer's objections. We today order the former employer to pay the former employee $233,536 in reasonable attorney's fees and $10,982.76 in unopposed costs.

**I.      Adduced facts.**

Cafaro Group, LLC fired its oldest employee, Thomas Giedgowd, on March 22, 2019. Our jury found his sixty-six years of age was a determinative factor in terminating him. Mr. Giedgowd is a college graduate and holds a master's degree. He is an experienced financial professional with a long career in retirement planning for university and private school employees.

Mr. Giedgowd contacted counsel soon after Cafaro fired him. Counsel referred him to Stephen G. Console, Esquire who founded a well-known employee rights law firm in Philadelphia known as Console Mattiacci Law, P.C. Founder Console and Mr. Giedgowd first met in March 2019.[1] Founder Console interviewed Mr. Giedgowd on April 4, 2019. Founder Console decided to take his case. He offered Mr. Giedgowd the choice of whether his firm would represent him on an hourly fee arrangement or a straight contingency fee agreement. Mr. Giedgowd chose representation on a straight contingency fee basis.

Founder Console then presented Mr. Giedgowd with a contingency fee agreement for persons in New Jersey.[2] Founder Console identified his hourly rate could be $960 and included language in this agreement allowing his firm to recover the greater of the total amount of attorney's fees awarded following verdict or forty percent of the net verdict plus the awarded attorney's fees. Mr. Giedgowd signed this agreement on April 9, 2019. Founder Console, regarded as an experienced employment lawyer, knew neither Pennsylvania nor federal law allowed him to recover his fees on a percentage of recovery basis.[3] He nevertheless presented Mr. Giedgowd with

this contingency fee agreement allowing his firm to recover the greater of the fee we award under the Law or forty percent of the net verdict ($451,500) plus interest ($6,100), <u>plus</u> the reasonable fees we award. We have no evidence Founder Console advised Mr. Giedgowd to retain counsel to review the agreement or if Mr. Giedgowd did so on his own.

Founder Console supervised the matter and recorded 17.6 hours of time. He described some of his billed time in broad generalities without specifics. He participated in conferences and attended a settlement conference. He turned over the day-to-day management of Mr. Giedgowd's case through the administrative process to a less-experienced attorney in his firm, Ortal Mendelawe. Founder Console charged $260 an hour for Attorney Mendelawe to hourly clients. Attorney Mendelawe began by drafting an administrative complaint on April 12, 2019 and worked 21.2 hours through May 12, 2020 largely focusing on the administrative process. Mr. Giedgowd's lawyers filed an administrative complaint of discrimination with the Pennsylvania Human Relations Commission and Equal Employment Opportunity Commission on April 25, 2019.[4]

Founder Console assigned his son, Kevin Console, in May 2020 to take over the day-to-day management of Mr. Giedgowd's case. Kevin Console remains in the case as lead counsel. Attorney Console reviewed the administrative process, prepared a settlement demand, and began drafting a federal court complaint by December 2, 2020. Attorney Console filed the complaint on December 8, 2020.[5] Attorney Console then drafted an amended complaint, prepared for pretrial hearings, engaged in discovery, addressed summary judgment motions, and served as lead trial counsel. Attorney Console swears he contemporaneously billed 426 hours towards Mr. Giedgowd's case. His law firm charges $380 an hour for his time to hourly clients. His time entries include several block-billing entries where he identifies several tasks on the same day under one time entry.

Mr. Giedgowd's law firm then assigned associate Anna Norman to assist Attorney Console beginning in January 2021. The firm bills $220 an hour for her time to hourly clients. She billed time for catching up on the file, participating in depositions, preparing for settlement conferences, and providing almost daily services through trial. She swears she invested 267.8 hours towards Mr. Giedgowd's case. Her time entries include 4.6 hours of travelling back and forth between her home, the office, and Courthouse during trial. She does not describe performing services for Mr. Giedgowd during these trips back and forth.

Attorney Console dropped the claims under the Age Discrimination in Employment Act in response to Cafaro's summary judgment motion. We proceeded to trial in late July 2021 on the Pennsylvania claim. Attorney Console presented and cross-examined each witness and each piece of evidence during the four-day trial before our jury. The jury awarded Mr. Giedgowd $180,000 in pain and suffering, $114,000 in back pay, and $157,500 in front pay. We today denied Cafaro's motion for judgment as a matter of law or for new trial in its favor and granted Mr. Giedgowd's unopposed motion for $6,100 in prejudgment interest.

**II.     Analysis**

Mr. Giedgowd moves for attorney's fees and costs under the allowances set by the General Assembly in the Pennsylvania Human Relations Act. He asks we add $243,124 in reasonable fees and $10,982.76 in incurred costs to his judgment. Cafaro asks us to deny attorney's fees under the Pennsylvania Law arguing the evidence is weak and not overwhelming and if not, we should strike requested time recorded by Founder Stephen Console, Attorney Kevin Console's block billing entries, and Anna Norman's travel time during trial and time expended on mistaken deposition designations which proved troublesome at trial. Cafaro does not challenge the costs.

We disagree with Cafaro's challenge to the fees based on the strength of the case. The jury found Mr. Giedgowd credible; it apparently found one or more of Cafaro's witnesses not as credible. We agree with Cafaro as to Founder Console's insufficient billing and hourly rate. We overrule its objections as to Attorney Kevin Console's block billing. We sustain its objection to Attorney Norman's billing for traveling from her home to the office to the courthouse during trial. We overrule its objection to her time invested in the deposition designations.

In civil rights cases, we employ the "lodestar" formula to calculate attorney's fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, which is presumed to be a reasonable fee.[6] Mr. Giedgowd, as the party seeking attorney's fees, "has the burden to prove that [his] request . . . is reasonable" by "submit[ting] evidence supporting the hours worked and rates claimed."[7] "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."[8] We have "a positive and affirmative function in the fee fixing process, not merely a passive role" and "[i]n calculating the hours reasonably expended, [we] should review the time charged, decide whether the hours set out were reasonably expended for each of particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."[9] In calculating the lodestar, we may not award less in fees than requested unless the opposing party makes specific objections to the fee request.[10] We may only reduce fees where there is an objection made, and we cannot decrease a fee award based on factors "not raised at all" by the adverse party.[11]

While our discretion is limited to reducing requested fees based on objections, our discretion in awarding attorney's fees in fee-shifting statutes "includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously

5

excessive.'"[12] Time entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."[13] Our Court of Appeals defines the requisite degree of specificity required of a party seeking attorney's fees as "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."[14]

### A. We find no basis to preclude all fees under Pennsylvania Law.

Cafaro first asks we award no attorney's fees because we should independently conclude Cafaro did not violate the Pennsylvania Law. Cafaro rests its entire challenge on its continued belief there is no evidence it violated Pennsylvania Law. It alternatively offers the evidence is weak and not overwhelming. We decline to make this finding as detailed in today's Memorandum denying Cafaro's motion for judgment as a matter of law. Mr. Giedgowd's attorneys overcame Cafaro's well-presented motion for summary judgment filed by a national law firm with over 900 lawyers focusing on employment rights in our Bar. His attorney forcefully and persuasively presented arguments to our jury. Attorney Console had to adduce direct testimony from his client and cross-examine four decision makers from Cafaro. Attorney Console persuasively presented evidence which persuaded the jury to find Cafaro's stated reasons did not justify terminating him without notice or earlier opportunity to remediate concerns. He persuaded the jury Mr. Giedgowd's sixty-six years of age was a determinative factor in Cafaro's decision to fire him.

These cases at trial always involve counterpoints. Juries are often called upon to evaluate the credibility of entirely different stories. We cannot find credence in Cafaro's argument based on its disagreement with the jury's finding. We overrule its objection to an award of any fee.

### B. We sustain Cafaro's objections to Founder Console's requested rate, ambiguous time entries, and Attorney Norman's billing for driving to and from the Courthouse during trial.

Cafaro objects to the requested attorney's fees of $243,124 as not reasonable. It challenges Founder Console's hourly rate and ambiguous billing as well as the necessity of his appearance. It further challenges Attorney Console's block billing on certain longer days and Attorney Norman's time invested in deposition designations, and time for traveling to and from work. We overrule many of Cafaro's objections but sustain objections as to Founder Console's requested rate and ambiguous billings as well as to time invested by Attorney Norman in traveling to and from work for a few days.

### 1. We sustain Cafaro's objection in part to Founder Console's time entries and requested hourly rate.

Cafaro objects to Founder Console investing any time in this case as unnecessary, to ambiguous billing entries, and to his requested $960 hourly rate. We agree as to the ambiguous billings and the requested hourly rate but otherwise overrule Cafaro's objections.

We overrule Cafaro's objection to Founder Console's decision to intake this case and continue to supervise the work performed by his son Kevin Console and junior associates. There is no basis to characterize Founder Console's time as redundant or unnecessary. This case involved complex issues concerning the interplay between federal and Pennsylvania law and the necessary cross-examination at trial of four decision makers from Cafaro. Attorney Console presented the case in a professional and well-organized manner. Clients who retain the Console Firm have the right to advice from senior attorneys. Attorney Console also sought the advice of experienced trial

7

counsel Laura Mattiacci who is not seeking reimbursement for her fees in this case. This type of thoughtful review by senior trial counsel is why clients retain the Console Firm and others like it. Clients may benefit from less experienced attorneys with lower rates but also know there is a senior attorney overseeing and steering the strategy as necessary. We do not discount Founder Console's time invested in ensuring the person he met in March and April 2019 received the services promised by the law firm he founded. We are not here to second guess lawyering strategies particularly when there is no evidence of overbilling or redundant time.

We sustain Cafaro's objections though to Founder Console's continued preference of billing time without identifying what he is doing. Cafaro specifically objects:

| Date | Hours | Task |
| --- | --- | --- |
| 7/21/21 | 0.5 | Internal conference with KC |
| 7/19/21 | 1.5 | Internal conferences with KC; telephone conference with LCM |
| 6/25/21 | 0.2 | Emails to and from KC |
| 6/23/21 | 1.0 | Internal conferences with KC |
| 5/6/21 | 0.2 | Telephone conference with KC |
| 12/8/20 | 0.3 | Telephone conference with KC; review email |
| 12/7/20 | 0.2 | Telephone conference with KC |
| 7/7/20 | 0.4 | Telephone conference with KC |
| 5/26/20 | 0.2 | Emails to and from Attorneys |
| 5/7/20 | 0.3 | Telephone conference with OTM |
| Total | 4.8 | |

We agree with Cafaro as to the uncertainty and ambiguity of these billing entries. We have no idea as to what Founder Console addressed or how it related in any way to Mr. Giedgowd. He faced the same issue in our *Middlebrooks* analysis but, for whatever reason, continued to bill (in part) without providing specificity and then asks us to approve those entries.[15] We strike 4.8 hours from his requested time.

8

Cafaro lastly objects to a lack of credible evidence as to the reasonableness of $960 an hour sought by Founder Console as his lodestar hourly rate. We addressed the same issue in *Middlebrooks* and found (absent a fee agreement) no basis to award Founder Console over $900 in fees sought by him when he entered his appearance in Mr. Middlebrooks's age discrimination case.[16] Like then, Founder Console again presents comparator affidavits of attorneys who swear both as to his well-known experience but conclude his rate is reasonable because it lies within a "range of fees charged for work in fee-shifting cases by experienced trial counsel."[17]

These identical verbatim sworn statements by two well-known and regarded comparator attorneys in the Philadelphia market do not attest to Founder Console's requested hourly rate being reasonable as a consultant in this case. They also bill at lower hourly rates including Attorney Gold who charges $650 an hour and has, in the view of many, a substantial employment rights docket in our Court as well. Attorney Gold swears his $650 hourly rate is reasonable because it falls well within the range of fees charged for work in fee-shifting cases by trial counsel. Attorney Gold has more years of experience than Founder Console and charges less. We are not suggesting a qualitative analysis. We are not qualified to do so; clients do so. We do not dispute Founder Console's "stellar reputation."[18] We are now called upon to review whether $960 an hour providing consulting and supervisory services and never entering an appearance is a reasonable rate in this District for an age discrimination case under Pennsylvania Law. We find no evidence allowing this rate.

Founder Console, unlike in *Middlebrooks*, requested Mr. Giedgowd sign a contingent fee agreement from New Jersey which identified Mr. Giedgowd's agreement to pay $960 per hour if he settled the case without the attorneys receiving a fee if paid on an hourly basis at 2019 rates. Mr. Giedgowd (apparently without the benefit of counsel) agreed to pay $960 per hour to Founder

Console should he settle without the attorneys receiving a fee. But Mr. Giedgowd's agreement to pay $960 an hour in a situation we do not face is not controlling. It offers some evidence of what Founder Console demands in the market under situations where cases are settled. He is an experienced and highly regarded advocate and clients may choose to pay him as they deem in their interests. But this is a different scenario.

We are left once again reviewing Founder Console's time based upon reasonable rates in the marketplace. As we did in *Middlebrooks*, we cannot find Community Legal Services' hourly rates are persuasive since this is an entirely different area of the law and there is no indication of their involvement or lawyers with Founder Console's experience and expertise in age discrimination matters.[19]

But we can look at what Cafaro paid for its attorney's fees at least as represented by Mr. Giedgowd's lawyers. Mr. Giedgowd's lawyers represented a high $615 hourly rate for Cafaro's law firm's partners in a law firm with 909 attorneys.[20] But we are not convinced to penalize Founder Console's hourly rate because of a deal at a lower rate Cafaro may have reached with its national law firm. We recognize Founder Console's principal role in the founding of this law firm and his guidance to his son and others in successfully persuading the jury to find Cafaro used age as a determinative factor in firing Mr. Giedgowd.

We are most persuaded by Attorney Gold's $650 hourly rate. This rate fairly calculates the services provided by Founder Console in this case. We are not suggesting Founder Console cannot be paid more if he entered an appearance, served as trial counsel, or if his specific time entries confirmed a more central involvement in the strategies. He does not offer us further evidence for the basis of an hourly rate of $960. He also offers no evidence supporting his requested rate other

than the affidavit of one attorney who apparently does not practice as much in the employment field at an hourly rate also lower than Founder Console's requested rate.

We sustain Cafaro's objection to Founder Console's requested reasonable hourly rate. We set Founder Console's reasonable hourly rate at $650 for the remaining 12.8 of time he invested.

## 2. We overrule Cafaro's objections to Attorney Kevin Console's billing.

Cafaro objects to Attorney Kevin Console's block billing entries on identified days ranging from 3.9 hours before trial to 13.7 hours during trial. Cafaro asks us to cut the time in half because it cannot allocate time to each task based on the time entries. Cafaro also then asks to cut the block billing entries by another one-third because they include the task "trial prep."

Courts justly scrutinize block billing when attorneys make it difficult to understand what the billing attorney is doing for the extensive amount of time billed on one entry. Time entries such as "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses" are sufficiently specific.[21] These types of entries inform both as to the task and the general subject matter. But entries such as "att[entio]n to papers" and "att[entio]n to status" without indicating "what 'papers' or 'status'" to which the attorney attended, and entries such as "e-mails," "conference call," "correspondence" and "review papers" are insufficient to determine if the hours claimed are unreasonable for the work performed.[22]

We are permitted to award time for block billing – "the practice of recording multiple tasks in one, non-itemized entry" – "so long as 'there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks.'"[23]

We agree block billing does not allow us to allocate time under different entries. Cafaro aptly cites our reasoning in *Middlebrooks* where we struck time with the entire representation of

11

"worked on trial prep."[24] We then advised the Console Firm and the Bar such type of entries would need a description in the contemporaneous time records if seeking an award of fees.

But on balance after scrutinizing the time entries, we overrule Cafaro's objections to trial counsel Attorney Kevin Console's block entries. We carefully reviewed each challenged entry. The block entries begin, for example, on February 10, 2021 where Attorney Console bills 4.4 hours identifying a great variety of specific tasks. Each "block billing" entry thereafter identifies numerous tasks undertaken during the recorded time. We do not require attorneys seeking fee-shifting provide minute-by-minute entries so long as the block billing is sufficiently specific so we can understand the extensive work effort performed on the billing day. We disagree with Cafaro's argument suggesting block billing reflects a stream of consciousness. Attorney Console's billing entries, while not the most artful presentation of the extensive work he performed leading to trial success, leave no doubt as to the extensive work he performed on each specific day. We further find his initial characterization of "trial prep" is appropriate on the last days before trial. Trial counsel have a great number of tasks and concerns in beginning a federal jury trial. Attorney Console details many of them including a variety of emails, preparing opening and closings and cross-examinations, meeting at the Courthouse, working through deposition designations, and presenting a mock opening. We also note Attorney Console specifically identifies time spent with senior attorney Laura Mattiacci where she is appropriately not billing for the same time.

Cafaro's objections to these block billing entries lack merit. We agree generally as to block billing and urge attorneys seeking a fee-shifting award to specifically identify the time billed as though they are billing a client. Attorney Console's challenged entries do so.

### 3. We sustain Cafaro's objection to Attorney Norman's travel entries but overrule the objection to billing for mistaken deposition designations.

Cafaro objects to two limited types of entries billed by Attorney Norman: reimbursement of hours for travel and time expended on designations for a deposition presented at trial which caused technical problems and disruption. We sustain Cafaro's objection to Attorney Norman billing time for traveling to and from the office and the Courthouse. We overrule the objection as to the time invested in the deposition designations.

We have no basis to award fees (not costs) for the time an attorney spent traveling to and from their local work. Attorney Norman needed to come to work. She commutes to work. We have no evidentiary basis to find she (or anyone else) bills travel time from home to office to her clients every day. We also note trial counsel Attorney Console did not bill for his travel to his office or the Courthouse.

We recognize there is now, and for some time, been a difference of thought in this District. But the fees could generally only be awarded when the petitioning lawyer shows the payment of attorney's fees for travel time customary in the market. In *Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey*, our Court of Appeals held "travel time is an out-of-pocket expense under [section] 1988 that is generally recoverable 'when it is the custom of attorneys in the local community to bill their clients separately for [it].'"[25] In *Planned Parenthood*, our Court of Appeals found the district court should have reviewed evidence travel time is compensable under New Jersey custom.[26] It also found "the rate at which such travel time should be compensated" requires looking to the practice of the local community.[27] Our Court of Appeals relied on the Supreme Court's holding in *Missouri v. Jenkins by Agyei*.[28] In *Jenkins*, the Court found a court must look to the practice in the local community to calculate "reasonable fees" under 42 U.S.C. § 1988.[29]

13

In *Witkowski v. International Brotherhood of Boilermakers, Iron Shipbuilders, Local Union 154*, Judge Conti in the Western District of Pennsylvania found "plaintiff should not be entitled to [the] [a]ttorney's full rate for all his travel time" between the court and his office.[30] In *Witkowski*, plaintiff prevailed on a retaliation claim under the ADEA and the PHRA.[31] Judge Conti found "[w]ith respect to reimbursement for travel time, district courts have awarded attorneys' fees at both full and reduced rates for travel time."[32] Judge Conti found the attorney's two counterparts "did not charge their services for traveling between their offices and the court and under those circumstances it would not be appropriate for [the other attorney] to charge for that time."[33] Judge Conti deducted fees from the attorney's post-trial fees for time billed to travel to and from the court and his office.[34]

Attorney Norman offers no evidence of a custom in this market for clients to pay their lawyers for the time driving to and from work. She offers no affidavit. She does not claim she worked during this travel time. She does not reply to Cafaro's objection. Neither Founder Console nor lead trial counsel Attorney Console billed for travel time. Absent evidence of a market practice where clients typically pay their lawyers for travel time to and from their residences to the Courthouse or office, we decline to create this obligation and impose it upon Cafaro. We strike 4.6 hours from Attorney Norman's time during trial:

| Bill Date | Dur/Qty | Description | Staff | Client |
|---|---|---|---|---|
| 7/25/2021 | 2.2 | Travel to/from Philadelphia from New Jersey in connection with trial. | ADN | Thomas Giedgowd |
| 7/26/2021 | 0.4 | Traveled to office in connection with trial. | ADN | Thomas Giedgowd |
| 7/26/2021 | 0.2 | Traveled to courthouse from office in connection with trial. | ADN | Thomas Giedgowd |
| 7/26/2021 | 0.3 | Traveled from courthouse following trial. | ADN | Thomas Giedgowd |
| 7/27/2021 | 0.3 | Traveled to courthouse for trial. | ADN | Thomas Giedgowd |

| | | | | |
|---|---|---|---|---|
| 7/27/2021 | 0.3 | Traveled from courthouse for trial. | ADN | Thomas Giedgowd |
| 7/28/2021 | 0.3 | Traveled home from trial. | ADN | Thomas Giedgowd |
| 7/28/2021 | 0.3 | Traveled to courthouse for trial. | ADN | Thomas Giedgowd |
| 7/29/2021 | 0.3 | Traveled to courthouse for trial. | ADN | Thomas Giedgowd |
| Total | 4.6 | | | |

We overrule Cafaro's objections to time invested by Attorney Norman on preparing the deposition designations of Marcie Carroll. We recognize the confusion at trial caused by incorrect designations. Those incorrect designations required new effort and arguably more time then should have been invested. But as with Founder Console's properly specified time, we cannot discount or second guess attorney work effort after the verdict. Her law firm asked her to perform these services and she did so. She did so presumably for the benefit of Mr. Giedgowd. Everyone, including the Court and opposing counsel, make mistakes. Mr. Giedgowd must appreciate mistakes; he also must appreciate the effort to make it right for the jury. We are not going to second guess Attorney Norman's time invested in correctly designating Marcie Carroll's deposition.

      **C.**    **We do not address Mr. Giedgowd's obligation to also pay a contingency.**

Mr. Giedgowd sued for age discrimination under the Age Discrimination in Employment Act and the Pennsylvania Human Rights Act.[35] Mr. Giedgowd and his counsel entered into a contingency fee agreement regarding his claims of age discrimination.[36] Counsel's contingency fee agreement provided "attorneys shall be paid a fee, contingent in whole or in part that is the greater of: (a) the total amount of a court award or settlement of attorney's fees; or (b) forty percent (40%) out of the net verdict, settlement or award obtained."[37] But at the time of entering the engagement, Mr. Giedgowd's counsel understood the Supreme Court's decision in *City of*

15

*Burlington v. Dague* precludes awarding contingency fee enhancements under federal claims with fee-shifting provisions, such as the ADEA.[38]

Our jury found in favor of Mr. Giedgowd's claim his termination based on age violated Pennsylvania law.[39] Mr. Giedgowd only requests the fees actually incurred by his counsel.[40] But Mr. Giedgowd also submits his attorney's contingency fee agreement.[41] We assume – because unlike in *Middlebrooks*, Attorney Console does not directly argue the validity of contingency-based attorney's fees under Pennsylvania Law – counsel for Mr. Giedgowd raises the issue of recovering contingency-based attorney's fees by providing their New Jersey fee agreement with Mr. Giedgowd.[42] We still have not found authority applying a contingency fee enhancement to a PHRA claim.[43] Mr. Giedgowd's counsel has not shown a basis for permitting recovery of contingency-based attorney's fees under the PHRA.[44]

But we do not address this contract concern between Mr. Giedgowd and his lawyers. Mr. Giedgowd has not objected to the legality of this fee agreement. No one suggests what the Console firm will be paid. We only order the amount of reasonable fees and uncontested costs Cafaro must pay as part of the judgment. We raise the issue as further notice to the employment Bar and its ethical obligations towards unrepresented clients.

### III.   Conclusion

Attorney Kevin Console artfully presented evidence during our four-day trial which persuaded the jury Mr. Giedgowd's age was a determinative reason for Cafaro's firing him in March 2019. Attorney Console faced a difficult burden as he had to rely entirely on his client's testimony and the cross-examination of four Cafaro decision makers. He met this burden and persuaded the jury to believe his client as opposed to the four decision makers. The jury awarded Mr. Giedgowd over $440,000 in damages.

Mr. Giedgowd is entitled to reasonable attorney's fees and costs under Pennsylvania Law. He presented substantial grounds for an award of fees and costs. We sustain Cafaro's objections to Founder Console's requested hourly rate and ambiguous billing entries. We further sustain Cafaro's objections to Attorney Norman's apparently unprecedented billing of travel time between her home, the office, and the Courthouse during trial. We otherwise overrule Cafaro's remaining objections. We today order Cafaro pay Mr. Giedgowd $233,536 in reasonable attorney's fees and reimbursement of $10,982.76 in unopposed reasonable costs.

---

[1] ECF Doc. No. 80-2.

[2] ECF Doc. No. 80-2. Mr. Giedgowd and the Console Firm are both Pennsylvania residents. No one explains why Mr. Giedgowd would have signed an agreement for New Jersey residents.

[3] We again reminded Founder Console of this long-established principle approximately a month before he met Mr. Giedgowd in our analysis approving most of his requested fee in *Middlebrooks v. Teva Pharmaceuticals*, No. 17-412, 2019 WL 936645, at *17 (E.D. Pa. Feb. 26, 2019). Founder Console appealed our *Middlebrooks* fee holding on different grounds but resolved the appeal before decision. No. 17-412, ECF Doc. Nos. 162, 175 (E.D. Pa.).

[4] ECF Doc. No. 1 ¶ 21.

[5] ECF Doc. No. 1.

[6] *Hensley v. Eckerhart*, 461 U.S 424, 433 (1983); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stetson*, 465 U.S. 886, 897 (1994)).

[7] *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) (quoting *Rode*, 892 F.2d at 1183).

[8] *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (quoting *Rode*, 892 F.2d at 1183)).

[9] *Clemens*, 903 F.3d at 400 (internal quotations omitted).

[10] *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211-12 (3d Cir. 2000).

[11] *United States ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 137 (3d Cir. 2018) (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)).

---

[12] *Clemens*, 903 F.3d at 398 (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)).

[13] *Id.* at 401 (quoting *Washington v. Phila. Cty. Ct. of Com. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996)).

[14] *Washington*, 89 F.3d at 1037–38 (quoting *Rode*, 892 F.2d at 1190).

[15] *See Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 WL 936645, at *8–9 (E.D. Pa. Feb. 26, 2019), *appeal dismissed*, No. 19-1525, 2019 WL 4316872 (3d Cir. July 26, 2019).

[16] *Id.* at *12–13.

[17] ECF Doc. No. 80-2 at 67 of 97, 71 of 97.

[18] ECF Doc. No. 80-2 at 71 of 97, ¶ 7.

[19] *Middlebrooks*, 2019 WL 936645, at *13.

[20] ECF Doc. No. 80-2 at pp. 93–94 of 97.

[21] *Rode*, 892 F.2d at 1191 n.13; *see also McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 671 (E.D. Pa. 2009) (finding challenge to 18.8 hours of billed time described as "Research," "Review research," "Research ADEA," or "Research ERISA" sufficient for the court to determine whether the costs claims were unreasonable for the work performed).

[22] *Tenalfy Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 100-01 (3d Cir. 2006) (quoting *Washington*, 89 F.3d at 1037)).

[23] *Pasternack v. Klein*, No. 14-2275, 2017 WL 4642283, at *3 (E.D. Pa. Oct. 17, 2017) (quoting *Hatchett v. City of Phila.*, No. 09-1708, 2010 WL 4054285, at *4 (E.D. Pa. Oct. 15, 2010)).

[24] *Middlebrooks*, 2019 WL 936645, at *7.

[25] 297 F.3d 253, 267 (3d Cir. 2002) (quoting *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (looking to section 1988 cases to determine whether to award out-of-pocket expenses in a case under the New Jersey Law Against Discrimination)); *see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005), *as amended* (Nov. 10, 2005).

[26] *Planned Parenthood of Cent. N.J.*, 297 F.3d at 267.

[27] *Id.*

[28] *Id.*; *see also Missouri v Jenkins*, 491 U.S 274 (1989).

[29] *Planned Parenthood of Cent. N.J.*, 297 F.3d at 267-68.  We are also aware of Judge Gardner's thinking in *Arietta v. City of Allentown*. No. 04-226, 2006 WL 2850571 (E.D. Pa. Sept. 29, 2006), but we decline to follow him on both legal and factual grounds. Judge Gardner acknowledges

"courts in this district have taken conflicting views with respect to this issue." *Id.* at *5. "Although the district courts apparently agree that travel is compensable at some rate, there does not seem to be consensus as to whether time spent traveling should be paid at an attorney's full rate or at some reduced rate in recognition of the fact that travel does not constitute legal work or require the exercise of legal skill." *Id.* Judge Gardner found "[b]ecause neither plaintiffs nor defendants presented evidence on the issue of whether it is customary in this district to bill separately for travel, [Judge Gardner] exercise[s] . . . discretion in determining this issue." *Id.* Judge Gardner awarded counsel's travel time at the full rate because one of the counsel spent commuting time working and "the travel time at issue in this case is relatively minor as compared to the bill as a whole." *Id.* Attorney Norman does not argue she spent her traveling time working for Mr. Giedgowd.

[30] No. 06-874, 2010 WL 1433104, at *12 (W.D. Pa. Apr. 7, 2010).

[31] *Id.* at *1.

[32] *Id.* at *12 (citing *Steward v. Sears, Roebuck & Co.*, No. 02-8921, 2008 WL 1899995, at *6 (E.D. Pa. Apr. 29, 2008) (finding an attorney loses the opportunity to meet with other clients or perform other legal work when engaged in travel necessary to the case; comparing other courts' decisions related to reimbursement of travel time), and *Kurschinske v. Meadville Forging Co.*, No. 06-87, 2008 WL 4462294, at *4 (W.D. Pa. Sept. 30, 2008) (reducing fees for travel time by two-thirds where the record did not reflect that the plaintiff was unable to obtain counsel within the forum)).

[33] *Id.*

[34] *Id.* Contrary to Cafaro's cited authority, Attorney Norman is not seeking this travel time because there is no one else in this District who could assist Attorney Console. Cafaro relies on our Court of Appeals's opinion in *Hahnemann University Hospital v. All Shore Inc*. In *All Shore*, our Court of Appeals found "under normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel. However, where forum counsel are unwilling to represent plaintiff, such costs are compensable." *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312 (3d Cir. 2008) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 (3d Cir. 2005)). In *All Shore*, appellants argued against Judge Green's award of travel and expense costs for appellee's Colorado counsel. *Id.* at 311. The Court of Appeals remanded Judge Green's award of travel and expense costs because "there is nothing in the record to suggest that counsel from within the forum was unwilling to represent [appellee] in this straightforward, albeit lengthy . . . action." *Id.* at 312. This authority is inapposite.

[35] ECF Doc. No. 3 at 1, 7–8.

[36] ECF Doc. No. 80-2 at 39–41.

[37] *Id.* at 39.

---

[38] *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). *See also Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 534 (3d Cir. 1997). Mr. Giedgowd's counsel previously admitted to this Court recovery of contingency fees are not permitted under federal laws. *See Middlebrooks*, 2019 WL 936645, at *17. ("[Plaintiff] concedes a contingency fee enhancement on his federal claims is precluded under the Supreme Court's decision in *City of Burlington v. Dague*.").

[39] ECF Doc. No. 69; *see also* ECF Doc. No. 80 at 5. Mr. Giedgowd voluntarily dismissed his claims under the ADEA and only pursued his Pennsylvania claim at trial. *Id.* at 1 n.2.

[40] ECF Doc. No. 80 at 7-8 (calculating attorney's fees as a lodestar amount based on each attorney's hours worked and hourly rate).

[41] ECF Doc. No. 80-2 at 39-41.

[42] *Id.*; *see also* ECF Doc. No. 80 at 7-8.

[43] *Middlebrooks*, 2019 WL 936645, at *18.

[44] *Id.*; *see also* ECF Doc. No. 80.